to furnish a safe place includes the duty to exercise reasonable care and prudence to guard against such dangers as may reasonably be foreseen and guarded against (Pantzar v. Tilly Foster Iron Mining Co., 99 N. Y. 368, 2 N. E. 24; McGovern v. C. V. R. R. Co., 123 N. Y. 280, 25 N. E. 373); and, if the place may become dangerous by reason of perils not arising from the particular work, it is the master's duty to give such warning as will enable the servant in the exercise of reasonable care to avoid or guard against such additional dangers, Felice v. N. Y. C. & H. R. R. R. Co., 14 App. Div. 345, 43 N. Y. Supp. 922. It is difficult to distinguish the case last cited from the case at bar, because it cannot matter that the added danger arose, not from other work pertaining to the master's business, but from work of third persons, provided the master knew that such danger was bound to occur. In the case at bar we have the concession that the master took no means whatever to give its servant warning of a danger which it must have known was constantly occurring. The fact that it had a foreman on the spot cannot relieve it from liability, because the master could not delegate the duty of exercising reasonable care to furnish a safe place. McGovern v. C. V. R. R. Co., supra; Pantzer v. Tilly Foster Iron Mining Co., supra. See, also, Aleckson v. Erie R. R. Co., 101 App. Div. 395, 91 N. Y. Supp. 1029.

We think the evidence, considered in the light of the respondent's concession, presented a question for the jury whether the defendant failed to exercise reasonable care to guard the plaintiff from the dangers arising from the operation of the trains upon the tracks where he was at work. It appeared that upon prior occasions an employé of the railroad company had warned the men employed by the defendant of the approach of trains by blowing a whistle. The plaintiff was not called upon to know in whose employ this man was, or that his master had trusted entirely to a stranger to the plaintiff to discharge the duty which it owed him. The question of contributory negligence and assumption of obvious risk could not, therefore, be disposed of as one of law.

The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.

---

### In re SHEPARD.

(Supreme Court, Appellate Division, Second Department. June 8, 1906.)

WILLS—CONSTRUCTION.

　　Testator gave to each of his three children property estimated to be worth $10,000, and he gave stock estimated to be worth $15,000 in trust to pay the income to his wife for life, or with her permission to apply it to the use or education of his grandchild, O., son of a deceased daughter, and on the death of his wife to apply the income to the use of O. till he was 23 years old or sooner died, the principal, on the death of the wife and arrival of O. at the age of 23 years, to be paid to O. He then gave his residuary estate in trust to divide the income among his three children and his wife, providing that on her death said estate should be divided into three parts, to be held in trust for the use of his three children, and that on the death of any of them his share should be distributed among his

grandchildren as directed, and provided that before any payment of principal should be made to O. $5,000 should be deducted therefrom, which should be treated as part of the residuary estate; the object thereof being declared to prevent O., by reason of the clause giving the $15,000, receiving a larger proportion of testator's estate than any other of his grandchildren. *Held*, that the provision for deduction of $5,000 referred to the principal of the gift of stock, estimated to be worth $15,000, and not to such portion of the residuary estate as might otherwise be distributed to O. on the death of a child of testator.

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account of the proceedings of Edward M. Shepard, trustee under the will of John R. Ackerman, deceased. From a decree, Orville D. Olyphant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

Adrian H. Joline, for appellant.

Adam Frank, for respondent.

MILLER, J. By the second, third, and fourth paragraphs, respectively, of his will, the testator gave to each of three children property estimated by him to be of the value of $10,000, and provided that in case of the disposition of such property by him they should have the value thereof. By the sixth paragraph he gave 150 shares of stock of the New York & Harlem Railroad Company, or, in case of its disposal by him, the value thereof in money, which he estimated at $15,000, to his executor, in trust to pay the income to his wife during life, or, with her permission, to apply the same to the use or education of his grandson, Orville D. Olyphant, the son of a deceased daughter, and upon the death of said wife to apply said income to the use of said grandson until he should reach the age of 23 years or sooner die, and upon both the death of said wife and the arrival of said grandson at the age of 23 years he directed that the property or money so held in trust should be paid to said grandson. By the eighth paragraph he gave his residuary estate to his executor, in trust to divide the income during the life of the wife among the wife and his three children as provided. By the ninth paragraph he provided that upon the death of the wife said estate be divided into three shares, to be held in trust for the use of his three children, respectively, and upon the death of a child that his share be distributed among the testator's grandchildren as provided. The last sentence of said ninth paragraph is as follows:

"Before any payment of principal shall be made to my grandson Orville D. Olyphant, I direct that there shall be deducted therefrom the sum of five thousand dollars, which shall be treated as part of my residuary estate hereinbefore mentioned; the object of this provision being to prevent my said grandchild, by reason of the provision contained in the sixth clause of my will, receiving a larger proportion of my estate than any other one of my grandchildren."

I have omitted immaterial provisions and provisions for contingencies that have not occurred. The wife is dead, and the grandson, Or-

ville D. Olyphant, has arrived at the age of 23 years, and the question is presented whether the provision quoted supra refers to the principal of the trust of the 150 shares of stock created in the sixth paragraph of the will for the benefit of the wife and said grandson, or whether it refers to such portion of the residuary estate as might otherwise upon the death of a child be distributed to said grandson.

We think the learned surrogate correctly held that the provision referred to the principal of the trust created by the sixth paragraph of the will. Opposed to this construction, the appellant urges the familiar rules that an estate clearly given in one part of the will will not be cut down by subsequent words not equally clear, and that the courts strive to give that construction which will effectuate every clause of the will; but we think that the decree appealed from does no violence to either of these rules, and is in harmony with the controlling rule that the testamentary intention must be effectuated. There is nothing ambiguous about the clause in question. It plainly directs the addition to his residuary estate of the sum of $5,000 from the principal of the share otherwise given to said Orville, and the fact that this is to be added to his residuary estate clearly shows that it was to be taken, not from the residuary estate, but from some estate previously created. In the provision for distribution of the remainder of his estate among his grandchildren, he states that he seeks by it, so far as the law permits, to procure such final distribution among his grandchildren equally, and he names specifically the grandchildren whom he has in contemplation. It is not necessary for us to determine whether the scheme will eventually work equality among grandchildren; but it is plain that the testator regarded it as the best he could devise to effectuate such equality, and that he considered that, if Orville were given the $15,000 principal of the trust fund created for him and the testator's wife, it might result in inequality to the extent of the $5,000, which said sum exceeded the amount absolutely given to each of the testator's children.

The argument that the testator could not have intended that $5,000 should be deducted from 150 shares of stock is without force, because it is clear that in the testator's mind the shares of stock only represented a given sum of money, and that the directions of the will are satisfied either by the delivery of the stock or its equivalent in money. The reason for making the principal of the trust $15,000, and then providing in a subsequent paragraph that upon the termination of the trust the remainder to go to the said Orville should be reduced to $10,000, is clearly suggested in the opinion of the learned surrogate to the effect that the testator desired to give during the term of the trust created by the sixth paragraph the income from a larger sum than $10,000.

This construction seems to us the only one permitted by the express language of the testator, and the decree should therefore be affirmed, with costs to all parties payable out of the estate. All concur.